Justin D. Santagata, Esq.
Attorney ID: 000822009 (NJ)
DeCotiis Fitzpatrick Cole & Giblin LLP
61 Paramus Road, Suite 230
Paramus, New Jersey 07052
E: jsantagata@northjerseyattorneys.com
Attorneys for Plaintiffs

| | |
|---|---|
| TIFFANY BURTON, DENISA MESKOVIC, NATALIA LYNN KENNEDY, WHITNEY HELEM, CORRINE LUCAS, COURTNEY KAMARA, BRITTANY HARRIS, ANN ROBERTS, JANEL TURNER, ANDREA GRONDA, BENGINETTE PERRY, PRIXIE DINKENS, SARAH DUNCAN, ALYSSA SULLIVAN, CORRINDA CROCKET, JASON STEFANO, PHILISTRA PULCHAND, ANTHONY GALASSO, YODIT ESTAFANOS, SHANNON PASSWAITER, <br><br> Plaintiffs, <br><br> v. <br><br> INTERCONTINENTAL CAPITAL GROUP, INC. <br><br> Defendant. | UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORK <br><br> CIVIL ACTION <br><br> 2:22-cv-00691 <br><br> JURY TRIAL DEMANDED <br><br> THIRD AMENDED COMPLAINT FOR VIOLATION OF: (I) THE FEDERAL FAIR LABOR STANDARDS ACT; (II) NEW YORK WAGE/HOUR LAW; AND (III) THE FEDERAL AND NEW YORK WORKER ADJUSTMENT AND RETRAINING NOTIFICATION ACT |

Pursuant to Fed.R.Civ.P. 8, Plaintiffs allege as follows.

## INTRODUCTION

This is a complaint for unpaid overtime and other wage violations under the Fair Labor Standards Act ("**FLSA**") and the New York Wage/Hour Law ("**NY Wage Law**") and for failure to provide Plaintiffs with 60 days' notice of their layoff under the Federal Worker Adjustment and Retraining Notification Act ("**WARN**") and its

New York analogue ("**NY WARN**"). For a period of approximately 2 years, Defendant Intercontinental Capital Group Inc. ("**ICG**") knowingly underpaid Plaintiffs on their paychecks for vast amounts of overtime. The paychecks themselves set forth many of the triggering hours for overtime but simply failed to provide the requisite overtime pay. In the last several months, ICG has instituted a layoff of its "Consumer Direct Division" headquartered in New York, but ICG failed to provide Plaintiffs with 60 days' notice prior to the layoff, in violation of WARN and NY WARN. Plaintiffs are therefore entitled to 60 days' severance.

## <u>PARTIES</u>

1.      Plaintiff Tiffany Burton is a resident of and domiciled in New York.

2.      Plaintiff Denisa Meskovic is a resident of and domiciled in Missouri.

3.      Plaintiff Natalia Lynn Kennedy is a resident of and domiciled in Arizona.

4.      Plaintiff Whitney Helem is a resident of and domiciled in Missouri.

5.      Plaintiff Corrine Lucas is a resident of and domiciled in Pennsylvania.

6.      Plaintiff Courtney Kamara is a resident of and domiciled in Missouri.

7.      Plaintiff Brittany Harris is a resident of and domiciled in Texas.

8.      Plaintiff Ann Roberts is a resident of and domiciled in Missouri.

9.      Plaintiff Janel Turner is a resident of and domiciled in Michigan.

10.     Plaintiff Andrea Gronda is a resident of and domiciled in Michigan.

11.     Plaintiff Benginette Perry is a resident of and domiciled in Illinois.

12.     Plaintiff Prixie Dinkens is a resident of and domiciled in Texas.

13.     Plaintiff Sarah Duncan is a resident of and domiciled in Michigan

14.     Plaintiff Alyssa Sullivan is a resident of and domiciled in Georgia.

15.     Plaintiff Corrinda Crockett is a resident of and domiciled in North Carolina.

16.     Plaintiff Jason Stefano is a resident of and domiciled in Florida.

17.     Plaintiff Philistra Pulchand is a resident of and domiciled in New York.

18.     Plaintiff Anthony Galasso is a resident of and domiciled in Florida.

19.     Plaintiff Yodit Estifanos is a resident of and domiciled in North Carolina.

20.     Plaintiff Shannon Passwaiter is a resident of and domiciled in Indiana.

21.     Defendant ICG is a corporation doing business in New York and nationwide, with hundreds of employees. It is a lending institution focusing on home loans. Its headquarters are (or were) in Melville, New York. Plaintiffs were all paid and received overall direction and control from the headquarters in Melville, New York.

3

## SUBJECT MATTER JURISDICTION, PERSONAL JURISDICTION, AND VENUE

22.     Pursuant to 28 U.S.C. § 1331, 1367(a), and Fed.R.Civ.P. 4, the United States District Court for the Eastern District of New York has subject matter and personal jurisdiction over ICG because this complaint arises under the FLSA and WARN and ICG is located within the Eastern District of New York. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Eastern District of New York in Central Islip because that is within the county where ICG resides.

## FACTUAL BACKGROUND

23.     Plaintiffs were hired at various times by ICG from 2019 through 2021; most were hired in 2019 or 2020. Plaintiffs were all loan processors, or related positions such as "closers," in the "Consumer Direct Division" of ICG ("**Loan Processors**"), except for Ms. Dinkens and Ms. Crockett, who were underwriters ("**Underwriters**"), which is part of the "Consumer Direction Division."

## I.     Unpaid overtime

24.     The "Consumer Direct Division" of ICG was headquartered in Melville, New York, but Plaintiffs worked from home remotely throughout the United States. Though Plaintiffs worked remotely throughout the United States, they were often on the same "teams" taking direction from the headquarters in Melville, New York. For example, Ms. Burton and Ms. Harris worked on the same "team" as Loan Processors from different states, but took

direction from Melville, New York. An ICG organizational chart shows multiple "teams" with members in multiple states all reporting to a "manager" in Melville, New York.

25.     During their employment with ICG, Plaintiffs (other than those excluded in the relevant counts below) incurred substantial overtime from their hiring through the present for which they were not paid. Many of the actual overtime hours are set forth on Plaintiffs' paystubs covering 14 or 15-day periods, but it is not paid as overtime. For example:

- Ms. Harris' October 15, 2021 paystub shows 103.50 hours worked, but only 11.08 hours of overtime

- Ms. Roberts' August 31, 2021 paystub shows 127.90 total hours worked, but only 2.20 hours of overtime

- Ms. Kamara's January 15, 2021 paystub shows 101.59 total hours, but only .42 hours of overtime

- Ms. Turner's January 14, 2022 paystub shows 103.10 hours worked, but only 1.53 hours of overtime

- Ms. Helem's April 15, 2021 paystub shows 100.20 hours worked, but only 3.97 hours of overtime

- Ms. Kennedy's March 31, 2021 paystub shows 109.35 hours worked, but only 19.78 hours of overtime

- Ms. Meskovic's April 15, 2021 paystub shows 102.82 hours worked, but only 5.80 hours of overtime

- Ms. Burton's July 15, 2021 paystub shows 126.78 hours worked, but only 9.42 hours of overtime

- Ms. Gronda's April 15,2021 paystub shows 110.99 hours worked, but only 12.82 hours of overtime

- Ms. Perry's September 15, 2021 paystub shows 97.76 hours worked, but only 2.13 hours of overtime

- Ms. Dinken's January 15, 2021 paystub shows 126.02 hours worked, but only 17.07 hours of overtime

- Ms. Duncan's October 30, 2020 paystub shows 115.62 hours worked but only 16.72 hours of overtime

- Ms. Sullivan's January 15, 2021 paystub shows 97.40 hours worked, but only .80 hours of overtime

- Ms. Crockett's December 30, 2021 paystub shows 112.07 hours worked, but only .12 hours of overtime

- Mr. Galasso's June 30, 2021 paystub shows 98.83 hours worked, but no overtime

- Mr. Estifanos' September 15, 2021 paystub shows 96 hours worked, but only .12 hours of overtime

- Ms. Passwaiter's December 15, 2020 paystub shows 111.85 hours worked, but only 15.47 hours of overtime

26. Loan Processors were paid an hourly rate ranging from approximately $18.00 to $24.00 and Underwriters were paid approximately $35.00 to $46.00 per hour during their employment. Plaintiffs workweek for ICG was Sunday to Sunday. Over the course of Plaintiffs' employment, they were underpaid overtime or not paid overtime at all from a few hours most pay periods to sometimes 15-plus hours. For example, Ms. Burton's total hours worked for 2021 as of September 15, 2021 are listed at 1782.45 on her paystub, with 111.11 hours of overtime; but 1782.45 hours averages to 48.17 hours per week with 37 weeks as of September 15, 2021, which equates to 307.29 overtime hours in the 37-week period (approximately). As another example: for

an approximately 51-week period through December 15, 2021, Ms. Dinkens worked 2556.36 hours, was paid for 406.56 hours of overtime, but averaged 50.12 hours per week, which equates to 516.12 overtime hours in a 51-week period.

## II.   Unpaid commissions

27.    As part of their wages for their employment as Loan Processors, Loan Processors were paid commissions on each loan they closed, based on an escalating scale per month. The initial scale was: $25 per loan for the first 19 loans in a month; $35 for the 20th to 39th loan; $45 for the 40th to 49th loan; and $50 for each loan from 50 and above. It then changed to a different formula depending on the number of particular loan types closed, with commissions ranging from $150.00 to $250.00 per closed loan. In an average month, Loan Processors should have made at least $1,000 additional each month on commissions. While some commissions were paid, many were not. Eventually ICG ceased paying commissions altogether, even for loans that had already been started. For example, Ms. Burton is owed at least 8 commissions for January 1 through 10 of 2022 alone.

## III.   Unlawful layoff

28.    From November 2021 through March 2022, Plaintiffs were laid off from ICG in remote Zoom meetings. Based on available evidence, some individual Zoom meetings, by themselves, included over 50 employees at a time. In total, it appears ICG laid off between 80% to 85% of its workforce. Based

upon what Plaintiffs witnessed and learned, each time a Plaintiff was laid off during a 30-day period (or in the aggregate over a 90-day period) the layoff was: (i) of at least 50 employees from the "Consumer Direct Division"; and (ii) 33% of total employees for the "Consumer Direct Division." As of January 26, 2022, ICG purportedly had only 30 Loan Processors and Underwriters remaining of 200 or more total in the prior 90 days.

29.     Plaintiffs understood their "operating unit" to be the "Consumer Direct Division." An ICG organizational chart refers to a "Consumer Direct Division" or similar wording. While Plaintiffs worked remotely from home throughout the United States, they reported to and were managed by ICG's headquarters in Melville, New York, were paid from that location, received human resources and administrative oversight from that location, received assignments and direction from that location, and the "Consumer Direct Division" was based in that location. Some Plaintiffs were issued "telecommuting agreements" with ICG from Melville, New York, regardless of where they were located in the United States. Loan Processor training was conducted remotely out of Melville, New York. Plaintiffs' "supervisors" were all remote and worked from home like the Loan Processors and Underwriters, under the direction of a "manager" in Melville, New York, which is set forth on an ICG organizational document. Some Plaintiffs or other ICG employees were granted family medical leave under the Federal Family Medical Leave Act, but to qualify there had to be at least 50 ICG employees within 75 miles; the only

location that could have met that standard was Melville, New York, despite that family medical leave was granted no matter where a Plaintiff or ICG employee was located. And some Plaintiffs have discovered that ICG was not registered with many or all state unemployment agencies, except in New York because Melville, New York was Plaintiffs' only true place of employment with ICG.

30.     Even if Plaintiffs were purportedly assigned a "branch" separate from Melville, New York, any "branch" for which a Plaintiff was purportedly assigned was shut down via a Zoom meeting or a series of Zoom meetings, resulting in a layoff of at least 50 employees and at least 33% of employees at each "branch" in a 30-day period or in the aggregate over a 90-day period. For example, Ms. Meskovic was located closest to a purported "branch" in St. Louis, Missouri and she was laid off in a Zoom meeting in January 2022 that appeared to have at least 50 employees in it by itself. Plaintiffs are aware of tens of similar Zoom meetings across the United States. In one day in January 2022 alone, ICG apparently laid off 200 to 300 employees.

31.     Based on available information, purported "branches" separate from Melville, New York were not available to Plaintiffs and not separate at all, evidencing that Melville, New York was the only true "branch" for Plaintiffs. For example, Mr. Crockett requested to go in person a few days at a purported Raleigh, North Carolina "branch" and was told it was not available. Ultimately,

the only real "branch" and "single site of employment" for Plaintiffs under WARN and NY WARN was Melville, New York.

### COUNT ONE
### OVERTIME UNDER FAIR LABOR STANDARDS ACT (ALL PLAINTIFFS EXCEPT MS. LUCAS AND MR. STEFANO)
### (29 U.S.C. § 201, et seq.)

32.  Plaintiffs (as defined in the caption to count one) incorporate paragraphs 1 through 31 of this complaint as if fully set forth in this count.

33.  ICG is an "employer" under the FLSA. The FLSA requires employers to pay as overtime 1.5 times the rate of pay to an employee for every hour worked over 40 hours in a workweek.

34.  Plaintiffs are entitled to overtime pay from the beginning of their employment with ICG.

35.  ICG knowingly and continuously failed to pay or underpaid Plaintiffs' overtime despite that paystubs plainly show a number of hours worked that, of necessity, required overtime.

### COUNT TWO
### OVERTIME UNDER NY WAGE LAW (ALL PLAINTIFFS EXCEPT MS. LUCAS AND MR. DESTEFANO)
### (N.Y. Comp. Codes R. & Regs. Tit. § 142.2.2)

36.  Plaintiffs (as defined in the caption to count two) incorporate paragraphs 1 through 35 as if fully set forth in this count.

37.  Pursuant to the NY Wage Law, the New York Commissioner of Labor has promulgated a "miscellaneous wage order" that incorporates the overtime requirements of the FLSA:

An employer shall pay an employee for overtime at a wage rate of 1 ½ times the employee's regular rate in the manner and methods provided in and subject to the exemptions of sections 7 and 13 of 29 USC 201 *et seq.,* the Fair Labor Standards Act of 1938, as amended [29 USC §§ 207, 213]; provided, however, that the exemptions set forth in section 13(a)(2) and (a)(4) of such act shall not apply. In addition, an employer shall pay employees subject to the exemptions of section 13 of the Fair Labor Standards Act, as amended, except employees subject to section 13(a)(2) and (a)(4) of such act, overtime at a wage rate of 1 ½ times the basic minimum hourly rate.

38.     Under the NY Wage Law and the "miscellaneous wage order," Plaintiffs are entitled to overtime in the same amount and for the same reasons as set forth in count one.

## COUNT THREE
## VIOLATION OF NEW YORK LABOR LAW § 195(3)

39.     Plaintiffs incorporate paragraphs 1 through 38 of this complaint as if fully set forth in this count.

40.     New York Labor Law § 195(3) requires that an employer provide an employee with a statement for each pay period correctly showing, among other things, the amount of overtime worked and the amount of wages due. An employee is entitled to recover $250 per day if the employer does not comply or a maximum penalty of $5,000.

41.     For most of Plaintiffs employment (and possibly all of it), ICG failed to provide Plaintiffs with correct pay statements under New York Labor Law § 195(3), easily amounting to the maximum penalty of $5,000 per Plaintiff, because the pay stubs fail to correctly show overtime and fail to include due commissions.

11

**COUNT FOUR**
**VIOLATION OF WARN AND NY WARN (NOT INCLUDING MS. HELEM**
**AND MS. ROBERTS)**
**(29 U.S.C. § 2101; New York Labor Law § 860)**

42.     Plaintiffs (as defined in the caption to count four) incorporate paragraphs 1 through of the complaint 41 as if fully set forth in this count.

43.     WARN and NY WARN require certain employers to provide 60 days' notice of "plant closings" and "mass layoffs" at a "single site of employment."

44.     Failure to provide 60 days' notice entitles a covered employee to severance and the value of lost benefits for each day that notice should have been provided.

45.     Plaintiffs' layoffs were a "plant closing and "mass layoff" under WARN and NY WARN. WARN's requirements for a plant closing or mass layoff are: (i) for a plant closing, shutdown of an operating unit resulting in loss of employment for 50 or more employees in a 30-day period at a single site of employment; and (ii) for a mass layoff, reduction in force at a "single site of employment" of 33% of active employees and at least 50 employees, except if 500 or more employees are laid off then the 33% requirement does not apply. NY WARN's requirements for a plant closing or layoff are the same except, the number for a plant closing is 25 employees and the number for a mass layoff is 25 employees, with the same exception as WARN but at 250 employees.

46.     The "Consumer Direct Division" is an "operating unit" under WARN and NY WARN headquartered in Melville, New York. Separately, Loan Processors and Underwriters are "operating units" under WARN and NY WARN.

47.     Plaintiffs were remote, work-from-home employees under WARN and NY WARN, meaning their "single site of employment" under WARN and NY WARN is the location "to which they are assigned as their home base, from which their work is assigned, or to which they report." Melville, New York qualifies at least on the latter two options and Plaintiffs considered Melville, New York their "home base" because of the remote nature of their work.

48.     During each 30-day period covering each of Plaintiffs' layoffs, at least 50 employees were laid off from ICG comprising at least 33% of the workforce who received direction from or ultimately reported to Melville, New York, or at least 500 employees overall connected to Melville, New York in the same manner. Even if this were not true, any "branch" to which a Plaintiff was purportedly assigned independently qualifies as a "single site of employment" with at least 50 layoffs and 33% of active employees being laid off in a 30-day period in which a Plaintiff was laid off.

49.     WARN and NY WARN contains catchall provisions ensuring that employers cannot evade their protections by undertaking "plant closings" or "mass layoffs" in stages or structuring their "single sites of employment" to evade WARN and NY WARN:

> For purposes of this section, in determining whether a plant closing or mass layoff has occurred or will occur, employment losses for 2 or more groups at a single site of employment, each of which is less than the minimum number of employees specified in section 2101(a)(2) or (3) of this title but which in the aggregate exceed that minimum number, and which occur within any 90-day period shall be considered to be a plant closing or mass layoff unless the employer demonstrates that the employment losses are the result of separate and distinct actions and

13

causes and are not an attempt by the employer to evade the requirements of this chapter.

...

The term "single site of employment" may also apply to truly unusual organizational situations where the above criteria do not reasonably apply. The application of this definition with the intent to evade the purpose of the Act to provide notice is not acceptable.

To the extent a layoff of any particular Plaintiff is not covered under WARN and NY WARN by the allegations above, these catchall provisions encompass such Plaintiff(s).

## COUNT FIVE
### VIOLATION OF NY WAGE/HOUR LAW: UNPAID COMMISSION (MS. MESCOVIC, MS. BURTON, MS. KAMARA, BRITTANY MS. HARRIS, MS. KENNEDY, MS. ROBERTS, AND MR. STEFANO) (NEW YORK LABOR LAW § 198)

50.    Plaintiffs (as defined in the caption to count five) incorporate paragraphs 1 through 49 of the complaint as if fully set forth in this count.

51.    New York Labor Law § 191-a(a) defines "wage" to include "commission." A "bonus" based on performance, such as that given by ICG to Plaintiffs, is a "commission" and therefore a "wage" under New York Labor Law.

52.    As such, ICG's failure to pay Plaintiffs their due commissions is a violation of New York Labor Law § 198, entitling Plaintiffs to the same penalties as for the overtime violation set forth above.

## DEMAND FOR RELIEF

Pursuant to counts one through five of this complaint, Plaintiffs demand relief as follows:

14

(a)     Past due overtime, liquidated damages, pre and post-judgment interest, attorneys' fees, and costs under the FLSA and the NY Wage Law

(b)     $5,000 per Plaintiff, plus attorneys' fees and costs, under New York Labor Law § 195(3)

(c)     60 days' severance and the value of benefits from the date each Plaintiff should have been notified of their layoff under WARN and NY WARN, with pre and post-judgment interest, attorneys' fees, and costs

(d)     A $500 penalty per Plaintiff, per each day for which notice was required under WARN and NY WARN

(e)     All due commissions as wages under NY Wage Law, plus liquidated damages, pre and post judgment interest, attorneys' fees, and costs.

## JURY DEMAND

Pursuant to Fed.R.Civ.P. 38, Plaintiffs demand trial by jury on all issues so triable.

## RELATED CASES CERTIFICATION

Pursuant to L.Civ.R. 13(a)(1), the following cases may be "related" as that term is defined in the rule: Lucas v. Intercontinental Capital, 2:22-cv-00591 (Feb. 1, 2022).

Dated: April 22, 2022

_____
JUSTIN D. SANTAGATA, ESQ.
ATTORNEY FOR PLAINTIFFS