––––––– LAW OFFICES –––––––
**DECOTIIS**
DeCotiis, FitzPatrick, Cole & Giblin, LLP

61 SOUTH PARAMUS ROAD, SUITE 250
PARAMUS, NEW JERSEY 07652

NEW JERSEY
NEW YORK

TELEPHONE: (201) 928-1100
TELEFAX:      (201) 928-0588
WWW.DECOTIISLAW.COM

JUSTIN D. SANTAGATA, ESQ.
JSANTAGATA@DECOTIISLAW.COM
201.347.2131

May 2, 2022

**VIA ECF**
Hon. Eric N. Vitaliano, U.S.D.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re: **Burton, et al. v. Intercontinental Capital Group Inc.**, 2:22-cv-00691

Dear Judge Vitaliano:

      We represent Plaintiffs in the above case. Please accept this short response to Defendant's pre-motion letter under Your Honor's individual rules. We adopt all shorthand and definitions from Defendant's letter for brevity. As an initial matter, Defendant appears to admit that every paystub for the 17 Plaintiffs is wrong and does not state the "hours worked," as required by NY Lab. Law § 195(3). This is an admitted liability of at least $85,000. NY Lab. Law § 198(1-d).

      Defendant is certainly entitled to test Plaintiffs' complaint on the WARN Act, but that that test will likely fail because the majority of circuits have held that Subpart 6 encompasses what is pled in Plaintiffs' complaint. See e.g. Ciarlante v. Brown & Williamson Tobacco Corp., 143 F.3d 139, 148–149 (3d Cir. 1998). Defendant's letter conveniently overlooks most of the allegations and simply argues that, as a matter of law, work-from-home employees are not subject to the WARN Act. This is a novel issue, to be sure, but Defendant has several major factual problems that it cannot overcome on a motion to dismiss, including that: (i) it granted Federal Family Medical Leave ("**FMLA**") to work-from-home employees on the basis that there were 75 employed within 50 miles of a "single site of employment" and the only location that could qualify was Melville, New York, the same "single site" for WARN Act purposes; and (ii) Defendant was not registered with many (or any) state unemployment agencies other than New York because it did not consider those employees as employed in any other state. (ECF13 ¶ 29.)

      On the overtime and paystub allegations, Defendant appears to shoot itself in the proverbial foot. It argues that Plaintiffs somehow have not pled overtime violations because their paystubs say "hours worked" but what is really meant is "hours paid." (ECF14 at 2-3.) Ignoring that is a clear factual dispute inappropriate for a motion to dismiss, it is a blanket admission that *every paystub to Plaintiffs* violated § 195(3) because it did not accurately set forth "hours worked." This is the quintessential example of why § 195(3) was enacted, known as the "New York Wage Theft Prevention

Case 2:22-cv-00691-ENV-ARL Document 15 Filed 05/02/22 Page 2 of 4 PageID #: 98

DECOTIIS
May 2, 2022
Pre-motion response
Burton v. ICG
Page 2

Act." Defendant's admission is the exact problem § 195(3) combats: attempting to obscure how many hours an employee worked so the employee cannot reasonably determine if they have been paid correctly. See New York Sponsors Memorandum to § 195(3), 2010 S.B. 8380. Therefore, Plaintiff cross-requests to move for summary judgment on the basis of Defendant's admission.

**I.     The WARN Act**

Defendant argues that Plaintiffs "appear" to rely on Subpart 6 for WARN Act liability, in addition to Subpart 8, 20 C.F.R. § 639.3(i)(8), which covers "truly unusual organizational situations." There is no ambiguity in Plaintiffs' complaint— they allege liability under the Warn Act based on Subparts 6 and 8. See ECF13 ¶ 47, 49 (citing Subparts 6 and 8). Factually, Plaintiffs allege (non-exhaustive): (i) they were managed and directed from Melville, New York on a day-to-day basis, no matter their remote location; (ii) Defendant's own organizational document(s) supports this allegation; (iii) Defendant used Melville, New York as the "single site of employment" for FMLA purposes; and (iv) Defendant was not registered with state unemployment agencies other than New York. (ECF 29 ¶ 13.) Though the Second Circuit has not definitively interpreted Subpart 6 (or 8), the Third Circuit has held that these allegations state a claim under Subpart 6 because they allege that Melville, New York was the "true source" of Plaintiffs' "day-to-day instruction." Ciarlante, 143 F.3d at 147; see also Teamsters Loc. Union 413 v. Driver's, Inc., 101 F.3d 1107, 1110 (6th Cir. 1996).

In promulgating Subpart 6, the Federal Department of Labor specifically rejected Defendant's argument here: "These workers **may not have an assigned home base**, but they must get their orders or assignments **from somewhere**." Worker Adjustment and Retraining Notification, 54 Fed.Reg. 16042, 16049 (April 20, 1989) [emphasis added]. Nor does Defendant's reliance on Meson v. GATX Tech. Servs. Corp., 507 F.3d 803, 809–810 (4th Cir. 2007), support its argument. The employee in Meson worked from a local office; the argument there was about the distinction between that local office and the headquarters. The argument was not about work-from-home employees without an office at all. Id. That sounds like a "truly unusual organizational situation."

Equally importantly, FMLA has a nearly identical provision to Subpart 6, which determines how to calculate if 50 employees are employed within 75 miles for FMLA eligibility. 29 C.F.R. § 825.111(a)(2). The legislative history to the WARN Act states that Subpart 6 and the nearly identical provision in FMLA must be "construed in the same manner." S. REP. 103-3 at 23, 1993 U.S.C.C.A.N. 3 at 25. As alleged in Plaintiffs' complaint, Defendant itself "construed [them] in the same manner" because it determined FMLA eligibility based on Melville, New York, regardless of where the employee was located. (ECF13 ¶ 29.) See Landgrave v. ForTec Med., Inc., 2022 WL 220387 at *7 (W.D.Tex. Jan. 25, 2022) (denying summary judgment to defendant

Case 2:22-cv-00691-ENV-ARL   Document 15   Filed 05/02/22   Page 3 of 4 PageID #: 99

**DECOTIIS**
May 2, 2022
Pre-motion response
Burton v. ICG
Page 3

because "remote employee" received assignments/management from FMLA-qualifying location) [pending publication].

## II.     Overtime

Defendant's arguments on Plaintiffs' overtime allegations will not detain the Court long. To state a claim for overtime violations, Plaintiffs only have to "plausibly" allege that: (i) they worked more than 40 hours in a week; and (ii) they were not paid 1.5 times their rate of pay for every hour over 40 hours. Lundy v. Cath. Health Sys. of Long Island Inc., 711 F.3d 106, 114 (2d Cir. 2013). Plaintiffs' complaint alleges, as to each Plaintiff (on overtime), a specific paystub showing an amount of hours worked that is wildly incompatible with overtime compliance for that pay period. For example, it alleges that Plaintiff Tiffany Burton's paystub for March 31, 2021, covering 2 weeks, shows 126.78 hours worked and 9.42 hours of overtime. (ECF13 ¶ 29.) Whether the number of days in that pay period was 14 or 15, i.e. 80 hours or 88 hours, there is no math where that does not "plausibly" support an overtime violation. If Ms. Burton worked 40 hours one week, that means she worked *86.78 another week*; if there were partial weeks in the pay period, the problem is *worse*, not better. The Court is required to apply its "common sense" here. Id. Plaintiffs' complaint then continues by using yearly hours worked to determine the average overtime owed per "work week." It is true that this is not an exactly precise manner of calculating overtime, but it is *fairly precise* and the results are, again, wildly incompatible with overtime compliance. Ms. Burton, for example, was paid 111.11 hours of overtime in 2021, but her total hours worked required 307.29 overtime hours to be paid. (ECF13 ¶ 26.) A difference of nearly *200 hours* is not "plausibly" accounted for by some pay periods being 15 days or some being only "partial," as Defendant alleges. (ECF14 at 2.)

All of Defendant's arguments on the overtime violations are factual— length of pay periods, vacation days, interpretation of "hours worked" versus "hours paid," review of timesheets— and cannot be adjudicated on a motion to dismiss anyway. Ray v. Weit, 708 F.App'x 719, 722 (2d Cir. 2017).

## III.    Paystub violations

The paystub violations only support the overtime violations. Defendant is improperly using its own record-keeping failures *as a defense*. This has long been rejected in overtime litigation. See Caserta v. Home Lines Agency, Inc., 273 F.2d 943, 946 (2d Cir. 1959) ("the obligation is the employer's, and it is absolute").

Defendant is entitled to file whatever motion to dismiss it wants, but Plaintiffs should be permitted to cross-move for summary judgment based on Defendant's admission that the paystubs do not comply with § 195(3). Not only is this fair, but it may facilitate a resolution, rather than dragging out the litigation through a motion to dismiss that seems very likely to be denied.

Case 2:22-cv-00691-ENV-ARL Document 15 Filed 05/02/22 Page 4 of 4 PageID #: 100

**DECOTIIS**
May 2, 2022
Pre-motion response
Burton v. ICG
Page 4

Plaintiffs are aware that related litigation, docketed Lucas v. Intercontinental Capital Group Inc., 2:20-cv-00591 (JMA-ARL) (Feb. 1, 2022), will proceed in "private mediation." Plaintiffs are open to participating in the mediation with the goal of a global resolution, but that has not yet been discussed with Defendant.

Respectfully submitted,

/S/

JUSTIN D. SANTAGATA

JDS
cc: Katherine Thomas Batista, Esq. (via ECF)